IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL NORERO,

    Plaintiff,

vs.                                                  Case No. 13-CV-1114 MCA/SCY

CINCINNATI INSURANCE COMPANY,

    Defendant.

## **ORDER**

THIS MATTER comes before the Court on Plaintiff's Motion to Compel Discovery Responses (*doc. 42*). Having reviewed the Motion and the accompanying briefs (*docs. 44-45*), the Court has decided to grant the Motion in part and deny the Motion in part as further described below.

    **I.**    **Background**

On December 10, 2009, Plaintiff Paul Norero was driving a delivery truck for his employer, Maloof Distributing, LLC, when he got into a car accident with Rosalinda Velarde, a 19-year-old driver. *Doc. 1*, Ex. A ¶¶ 7-8. Plaintiff subsequently pursued and settled claims against Ms. Velarde and her father ("the Velardes"), the owner of the vehicle Ms. Velarde was driving at the time of the accident. *Doc. 42* at 1-2. Then, on January 9, 2013, Plaintiff submitted an underinsured motorist claim to his employer's insurance company, Defendant Cincinnati Insurance Company. *Doc. 44* at 1. Defendant denied the claim, at least in part, because Plaintiff failed to obtain Defendant's consent before settling with the Velardes for their liability policy limits of $25,000. *Id.* at 2; *doc. 42* at 2. In this lawsuit, Plaintiff seeks (1) a declaratory judgment

that Defendant lacks a reasonable basis for denying Plaintiff's underinsured motorist claim and (2) damages for Defendant's alleged bad faith denial of the claim. *See generally doc.* 1, Ex. A.

## II.    Analysis

Plaintiff asks the Court to enter an order compelling Defendant to fully respond to his interrogatories (ROGs) and requests for production (RFPs), which Plaintiff claims are "specifically and narrowly tailored to address the central legal issue" in this case. *Doc. 42* at 4. Plaintiff's contested discovery requests can be sorted into three categories: (1) requests concerning Defendant's process for deciding when to consent to a settlement proposal (ROG 2, which is mislabeled as ROG 1 in Plaintiff's table, and RFP 2), (2) a request for Plaintiff's claim file (RFP 1), and (3) requests designed to obtain information in Defendant's possession concerning whether the Velardes were or were not judgment-proof (ROG 3, which is mislabeled as ROG 2 in Plaintiff's table, and RFPs 3-7). *Id.* Defendant objects to these requests on a variety of grounds, each of which the Court will address in turn.

### A.  Defendant's Process for Providing Consent to Settle.

Defendant objects to ROG 2 and RFP 2 on the basis that information concerning how an adjuster decides whether to consent to a settlement proposal, *i.e.* information about what would have happened if Plaintiff had sought Defendant's consent to settle as required under the terms of the insurance contract, is irrelevant to the central issue in this case: whether Defendant was substantially prejudiced by Plaintiff's failure to obtain its consent to settle. *Doc. 44* at 2, 3, 6. In New Mexico, breach of an otherwise valid consent-to-settle provision does not foreclose an insured's right to underinsured motorist benefits, unless the insurer was "substantially prejudiced" by the insured's breach of the provision. *State Farm Mut. Auto. Ins. Co. v. Fennema*,

2005-NMSC-010, ¶ 2, 137 N.M. 275.[1] Generally, the most significant factor in the "substantial prejudice" analysis is whether the tortfeasor has the financial resources to satisfy a judgment or is reasonably likely to obtain such finances in the future. *Id.* ¶ 12 (an insurer can show that it will be substantially prejudiced "by demonstrating the tortfeasor [i]s unlikely to be judgment-proof"); *see also Greenvall v. Maine Mut. Fire Ins. Co.*, 1998 ME 204, ¶13, 715 A.2d 949 (evidence concerning the tortfeasor's lack of assets and credit card debt created a genuine issue of material fact concerning prejudice).

Plaintiff, however, seeks information going far beyond the nature of the Velardes' assets. In defense of these requests, Plaintiff contends that the relevant issue in this case is whether Defendant would have consented to the Velarde settlement if it had been given the opportunity to do so. *See doc.* 45 at 2-3. In other words, Plaintiff interprets *Fennema* as adopting a subjective "what-if" test for determining whether to enforce a consent-to-settle provision. Defendant disagrees. *Doc. 44* at 6. Unfortunately, neither *Fennema* nor any other published New Mexico case directly addresses this issue. Thus, this Court must make an educated guess about how the New Mexico Supreme Court would define "substantial prejudice."

After carefully parsing the relevant New Mexico case law and considering the "general . . . trend of authority," *Armijo v. Ex Cam, Inc*., 843 F.2d 406, 407 (10th Cir. 1988), the Court concludes that the New Mexico Supreme Court would approach the "substantial prejudice" analysis objectively, *i.e.* substantial prejudice exists if the insured's breach of the consent-to-settle provision deprived the insurer of "a realistic potential . . . to recover from the tortfeasor," *Fennema*, 2005-NMSC-010, ¶ 16, regardless of whether the insurer would have availed itself of this opportunity. The Court has three reasons for believing this is the best statement of New

---

[1] While the insurer carries the ultimate burden of persuasion on this issue, proof of a breach of a consent-to-settle provision gives rise to a presumption of prejudice, allowing the jury to find in the insurer's favor absent rebuttable evidence showing that the insurer was not in fact harmed by the breach. *Id.* ¶ 13.

Mexico law. First, *Fennema* represents a careful balance between protecting the interests and expectations of insureds and respecting the contractual right of the insurer to decide how best to protect its subrogation interests. *Id.* ¶¶ 7-10. Plaintiff's understanding of "substantial prejudice" would upset this delicate balance by threatening to substitute an insurer's contractually obtained right to decide whether to pursue a claim for a speculative decision made by a third party as to whether the insurer would have pursued a claim.

Second, because many factors can influence an insured's decision whether to resist or pay a claim, Plaintiff's subjective "what if" test would be difficult to employ with accuracy. For instance, suppose an insurer's decision to pay off a relatively small claim was motivated by its desire to maintain a positive relationship with a particularly large client. To determine what an insured would have done, in addition to considering the solvency of the tortfeasor, a court would have to consider whether the size of the client would have affected the insurer's ultimate decision. Absent binding authority compelling it to do so, the Court declines to adopt a test that could require it to guess what idiosyncratic policy decisions an insured might or might not make.

Third, and finally, the generally recognized justification for the "substantial prejudice" rule is preventing insurers from receiving a windfall by refusing to provide underinsured motorist benefits to insureds who settle with judgment-proof tortfeasors without obtaining consent. *See*, *e.g.*, *Progressive Direct Ins. Co. v. Jungkans*, 972 N.E.2d 807, 814-815 (Ill. App. Ct. 2012). In such a case, the insurer cannot, as an objective matter, be said to have been harmed by the breach. As one court explained in applying the substantial prejudice rule:

> A judgment against [an impoverished tortfeasor] would not have been worth the paper it was printed on and no **reasonable** person would have expended the costs, let alone the attorney's fees, it would have required to get it. When [the insurer] lost the opportunity to secure the judgment, it lost nothing. Under our law, a technical and illusory "loss" of this kind cannot result in the forfeiture of insurance coverage.

4

*Southeastern Fid. Ins. Co. v. Earnest*, 395 So. 2d 230, 231 (Fla. Dist. Ct. App. 1981) (emphasis added). To the contrary, real loss may occur when an insured's settlement decision deprives the insurer of the right to decide, based on its own internal policies, whether or not to litigate a claim that has a reasonable possibility of success. In this scenario, the insurer has lost more than just the "chance to litigate for the sheer joy of it." *Jungkans*, 972 N.E.2d at 815.

In line with these principles, courts generally formulate the "substantial prejudice" test using objective language. For example, in *State Farm Mut. Auto. Ins. Co. v. Green*, 2003 UT 48, 89 P.3d 97, a case cited favorably by *Fennema*, the Utah Supreme Court defined prejudice as the loss of "a realistic possibility of recovering from the tortfeasor." *Id.* ¶ 33. While this definition requires the fact-finder to assess a variety of factors, including "the assets held by the tortfeasor, the strength of the insurer's subrogation claim (i.e., the strength of the underlying tort claim), the expenses and risks of litigating the insured's cause of action, and the extent of the victim's damage," it does not concern itself with what each idiosyncratic insurer might have done given the opportunity to approve a potential settlement. *Id.* In other words, the process by which an insurer, in this case Defendant Cincinnati Insurance Company, decides whether to provide consent to settle is simply not relevant to the "substantial prejudice" analysis. As a result, the Court will not compel Defendant to respond to Plaintiff's ROG 2 and RFP 2.

### B. Plaintiff's Claim File

In his motion to compel, Plaintiff listed RFP 1, a request for the production of Plaintiff's insurance claim file, as one area of dispute. *Doc. 42* at 4. In response, Defendant represented that it gave Plaintiff a copy of his entire claim file with a corresponding privilege log. *Doc. 44* at 3. However, neither Plaintiff nor Defendant has provided the Court with a copy of this privilege log. In a footnote in the reply, Plaintiff complains that Defendant "has chosen to withhold

substantial portions" of the claim file. *Doc. 45* at 3. However, Plaintiff has not provided the Court with an explanation of which of the withheld documents Plaintiff believes should be subject to discovery. In the absence of this information, the Court is not in a position to rule about whether Defendant is obligated to provide additional documents contained in the claim file. The Court will, therefore, deny Plaintiff's motion to compel Defendant to respond to Plaintiff's RFP 1.

### C.  Defendant's Investigation of the Velardes

The remainder of Plaintiff's discovery requests are intended to obtain information concerning whether the Velardes are judgment-proof. Defendant asserts two general objections to these requests: (1) relevance and (2) work-product. Neither objection is well-founded. First, Defendant attempts to avoid discovery requests aimed at the central issue in this case – substantial prejudice – by arguing that this information is not relevant until Plaintiff satisfies his initial burden of rebutting the presumption of prejudice. *Doc. 44* at 4, 8. While phrased as a matter of relevance, this argument sounds in privilege or protection. It is obvious that information relevant to whether Defendant was substantially prejudiced is also relevant to rebutting the presumption that Defendant was substantially prejudiced. The true thrust of Defendant's argument is that it should be protected from normal discovery requests until Plaintiff first comes forth with evidence setting forth a prima facie case that Defendant was not substantially prejudiced. However, Defendant does not cite any authority supporting this proposition. Because a defendant is not ordinarily shielded from discovery requests even though the plaintiff carries the burden of proof, the Court rejects Defendant's position.

Second, Defendant improperly seeks to use the work-product doctrine to protect any investigation it may have done concerning Plaintiff's underinsured motorist claim. The work-

product doctrine shields "documents and tangible things that are prepared in anticipation of litigation or for trial" from discovery. FED. R. CIV. P. 26(b)(3). In determining whether a document was prepared "in anticipation of litigation," courts consider the primary motivating purpose behind the creation of the document. *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 394 (N.D. Okla. 2010); *see also Sanchez v. Matta*, 229 F.R.D. 649, 655 (D.N.M. 2004). If future litigation is not the primary reason the document was created, it will be discoverable. *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 152 F.R.D. 132 (N.D. Ill. 1993) ("[T]he anticipation of future litigation must have been the primary motivation which led to the creation of the documents."). Consistent with this rule, "[m]aterials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine." *Lindley*, 267 F.R.D. at 394 (internal citation omitted).

In the case of insurance claims, courts generally treat documents an insurer creates before a final claims decision is reached as documents created in the normal course of business. To overcome this presumption, the insurance company must cite to specific evidence "that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision." *Id.* at 399 (quoting *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663-664 (S.D.Ind.1991)). In other words, if an insurer cannot "point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation," it cannot claim protection of the work-product doctrine. *United States Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007).

Here, Defendant has failed to identify such a shift. Defendant merely argues that "the threat of litigation was present from the moment Plaintiff reported his claim to Defendant,"

because (1) Plaintiff's counsel filed the claim, (2) Plaintiff's counsel asked that all communications with Plaintiff be sent to his office, (3) Plaintiff revoked all prior medical authorizations and disavowed prior settlement agreements, and (4) Plaintiff requested certain documents from Defendant. *Doc. 44* at 3, 7. What Defendant fails to realize is that "the inchoate possibility, or even likely chance of litigation, does not [alone] give rise to work product." *Lindley*, 267 F.R.D. at 394 (internal citation omitted). None of the facts cited by Defendant negated Defendant's responsibility to respond to the claim Plaintiff filed. For this reason, the Court cannot infer that every document Defendant created after Plaintiff's claim filed his claim was created primarily for the purpose of litigation rather than routine claim processing. The Court recognizes that there may have become a point where Defendant switched from claim processing to litigation preparation. However, Defendant, the party with the burden of establishing that a privilege is applicable, has not satisfactorily identified this shift. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) ("A party seeking to assert the privilege must make a clear showing that it applies."). Thus, the Court finds that the work-product doctrine does not protect Defendant from responding to ROG 3 and RFPs 3-7. [2]

### i.     Relevance Objection to RFP 6

Defendant objects to RFP 6 on the additional basis that information concerning a possible negligent entrustment claim against Oscar Velarde is not relevant to the present lawsuit. At the same time, in its motion for summary judgment (*doc. 31*), Defendant asserts that "Mr. Velarde's actions in allowing his daughter to drive his vehicle may very well have met the test for Negligent Entrustment" and then proceeds to argue that summary judgment is appropriate because Plaintiff has not provided evidence that Oscar Velarde is judgment-proof. *Id.* at 11. By

---

[2] For future reference, the Court notes that the mere filing of a lawsuit does not trigger the applicability of the work-product doctrine. If the documents sought "would have been created regardless of whether litigation was in the offing," these documents remain discoverable. *Lindley*, 267 F.R.D. at 394.

taking this position, Defendant has placed the viability of Plaintiff's putative claims against Oscar Velarde at issue. As a result, Plaintiff is entitled to seek discovery pertaining to this issue.

### ii. Relevance Objection to RFP 7

Plaintiff's final request for production asks Defendant to produce information showing that Rosalinda Velarde was not 100% at fault for the accident. *Doc. 42*, Ex. A at 12. Despite Defendant's relevance objection, Plaintiff never explains how this information relates to the issue of substantial prejudice. Instead, Plaintiff defends both RFP 6 and RFP 7 by explaining that he is attempting to seek information supporting the theory that Oscar Velarde negligently entrusted his vehicle to Rosalinda Velarde. To the extent that RFP 7 encompasses this topic it is superfluous as it requests the same information sought in RFP 6. Because it is not otherwise clear to the Court how RFP 7 would lead to the production of admissible evidence, the Court will not compel Defendant to respond to RFP 7.

IT IS THEREFORE ORDERED THAT:

1. Plaintiff's motion to compel (*doc. 42*) is granted in part and denied in part.

2. By December 10, 2014, Defendant must provide complete responses to Plaintiff's Interrogatory No. 3 and Plaintiff's Requests for Production Nos. 3-6.

3. Because Plaintiff's motion is granted in part, Defendant's request for fees is denied.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE