## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

PAUL NORERO,

        Plaintiff,

v.                                 No. 13-CV-1114 MCA/SCY

CINCINNATI INSURANCE COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant The Cincinnati Insurance Company's Motion for Summary Judgment on Plaintiff's Claim for Declaratory Judgment and Bad Faith ("Motion for Summary Judgment") [Doc. 31].  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

## BACKGROUND[1]

On September 30, 2013, Plaintiff Paul Norero ("Plaintiff") filed a complaint against Defendant The Cincinnati Insurance Company ("Cincinnati Insurance") in the Second Judicial District Court, County of Bernalillo, State of New Mexico seeking a declaratory judgment declaring that Cincinnati Insurance is obligated under a policy of insurance it issued to Plaintiff's former employer, Maloof Distributing, LLC ("Maloof"), to defend and indemnify Plaintiff for damages arising out of a December 10, 2009, motor vehicle accident involving Plaintiff and

---

[1]  On January 9, 2015, Plaintiff filed a *Notice Of Supplemental Exhibit To Plaintiff's Response In Opposition To Defendant's Motion For Summary Judgment* and attached various exhibits to the notice.  [Doc. 68].  The Court does not consider those exhibits herein.  Plaintiff's additional exhibits relevant to the Motion for Summary Judgment, filed without leave of court approximately seven months after his response to the Motion for Summary Judgment, is in essence a sur-reply not authorized by the Local Rules.  *See* D.N.M.LR-Civ. 7.4(b) ("The filing of a surreply requires leave of the Court.").  In addition, the Court holds that the exhibits are moot.  The Court decides the Motion for Summary Judgment on alternative grounds unrelated to the exhibits Plaintiff attaches.  For these reasons, the Court does not consider the exhibits.

third-party motorist Rosalinda Velarde (Velarde).  The accident occurred while Plaintiff was driving a truck for Maloof.  [Doc. 1-1, ¶¶ 7, 18-22; Doc. 34 at 1; Doc. 31 at 1].  The complaint also alleges a claim for bad faith against Cincinnati Insurance.  [Doc. 1-1, ¶¶ 23-28].  Cincinnati Insurance removed the complaint to this Court on November 18, 2013, on the ground that the Court has diversity jurisdiction over the claims.  [Doc. 1].

Plaintiff was injured as a result of the accident and initially retained attorney Patrick Fogel to represent him in making a claim against Velarde for the injuries he sustained.  [Doc. 35 at 2; Doc. 34 at 2].  On February 2, 2012, Plaintiff settled his claims against Velarde, Velarde's father, whose insurance policy with Hallmark Insurance Company ("Hallmark") covered the vehicle Velarde was driving at the time of the accident, and Hallmark in exchange for $25,000.  [*Id.*; Doc. 31-1].  This amount constituted the per person limit of the Hallmark policy issued to Velarde's father.  [Doc. 34 at 2].  Plaintiff was represented by Fogel at the time of this settlement.  [Doc. 31 at 2].  Neither Plaintiff nor Fogel contacted Cincinnati Insurance to secure its consent to settle prior to executing the release.  [Doc. 34 at 3; Doc. 31 at 4].

Plaintiff's first contact with Cincinnati Insurance regarding any claim involving the motor vehicle accident occurred when Plaintiff's current counsel, G. Ben Davis, contacted Cincinnati Insurance by telephone on January 9, 2013, to make a claim under the uninsured motorist coverage contained in the policy issued by Cincinnati Insurance to Maloof.  [*Id.*; Doc. 31-7 at 1].

On January 18, 2013, Cincinnati Insurance sent attorney Davis a letter reserving its rights based upon "pertinent violation[s] in policy conditions including but not limited to; Late notice of claim, first notice of claim exceeds the 3 year statute of limitations which may have prejudiced our right to recover from the responsible party and because [Plaintiff] settled his claim against the responsible party, February 2012, for [the party's] policy limits, releasing the tortfeasor from

liability without our expressed or impl[ied] consent."   [Doc. 31-7 at 3].   Thereafter, on June 13, 2013, Cincinnati Insurance sent Davis a letter denying coverage based on its assertion that Plaintiff violated the consent-to-settle provision, among others, in the policy.   [Doc. 34 at 3; Doc. 34-2]. In explaining its decision to deny coverage, Cincinnati Insurance stated, "Mr. Norero, while under guidance of counsel, violated numerous policy conditions that greatly prejudiced our right and ability to investigate[], settle[] and seek recovery from the responsible tortfeasor."   [*Id.* at 2].

The policy Cincinnati Insurance issued to Maloof provides in pertinent part that "[t]his insurance does not apply to:   [a]ny claim settled without our consent, if the settlement prejudices our right to recover payment."   [Doc. 31 at 2-3].   The policy also provides that

> [n]o lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorist Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement.   Any claim or "suit" for Uninsured Motorists Coverage must be brought within six (6) years of the date of the "accident" causing the "bodily injury".   Our subrogation rights also must not be prejudiced.

[Doc. 31-3 at 4].

On May 5, 2014, Cincinnati Insurance received an affidavit, signed by Velarde on April 25, 2014, under penalty of perjury attesting that "[Velarde] owns no real property or land," "[s]he owns no cars or other vehicles," and "[s]he has a high school diploma and no college degree." [Doc. 34 at 7; Doc. 31 at 4].   The December 10, 2009, police report documenting the accident contains the word "Student" under the caption "Occupation" in the portion of the report describing Velarde.   [Doc. 31-9].

## STANDARDS

Summary   judgment   is   appropriate   "if   the   pleadings,   depositions,   answers   to

3

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *accord Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999) (quoting Fed. R. Civ. P. 56(c)).   Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990) (citation omitted).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).   If the responding party fails to properly address the movant's assertion of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting

4

materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).   Upon a motion for summary judgment, a district court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may[] (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."   Fed. R. Civ. P. 56(d). When a party files an affidavit or declaration, the party invokes the court's discretion. *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993).   "'Unless dilatory or lacking in merit,'" a party's 56(d) application "'should be liberally treated.'"   *Id.* (quoting *Comm. for 1st Amend. v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)). "The general principle of Rule 56(d) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000).

"Rule 56[(d), however,] is not a license for a fishing expedition."   *Lewis v. Ft. Collins*, 903 F.2d 752, 759 (10th Cir. 1990).   A Rule 56(d) affidavit "'must explain why facts precluding summary judgment cannot be presented.   This includes identifying the probable facts not available and what steps have been taken to obtain these facts.   In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact.'"   *Price*, 232 F.3d at 783 (quoting *Comm. for 1st Amend.*, 962 F.2d at 1522); *see also Jensen*, 998 F.2d at 1554.  Rule 56(d) may not be invoked based solely upon the assertion that

5

discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. *See id*. (citation omitted).   Furthermore, "if the party filing the Rule 56[(d)] affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted."   *Id.* (citation omitted).

## DISCUSSION

Cincinnati Insurance contends that it is entitled to summary judgment in its favor on Plaintiff's declaratory judgment and bad faith claims because Plaintiff violated the consent-to-settle provision set forth in the insurance policy when he released Velarde, her father, and Hallmark from all liability, in exchange for the tortfeasor's policy limit of $25,000, without first obtaining Cincinnati Insurance's consent.   Cincinnati Insurance maintains it was substantially prejudiced by this breach.   It further maintains that Plaintiff's decision to wait over three years prior to notifying Cincinnati Insurance of the accident substantially prejudiced it because by the time it received notice of the accident the statute of limitations had run on any subrogated claims it had against Velarde for negligence or Velarde's father for negligent entrustment or liability under the family purpose doctrine.   Plaintiff contends that the Court should deny summary judgment because he presented evidence sufficient to rebut the presumption of substantial prejudice to Cincinnati Insurance that arose upon his breach of any of the insurance policy's provisions.

I.    When an Insured's Breach of a Policy Provision Relieves an Insurer of its Coverage Obligations.

The law regarding an insured's violation of a consent-to-settle provision in an insurance policy is clearly set forth in the New Mexico Supreme Court's decision in *State Farm Mutual*

*Automobile Insurance Co. v. Fennema*, 110 P.3d 491 (N.M. 2005).[2]   In *Fennema*, the Supreme Court "[f]or the first time . . . consider[ed] whether an insurance company must demonstrate substantial prejudice from the breach of a consent-to-settle provision before it can be relieved from paying underinsured motorist benefits."   *Id.* at 492.   Confronted with this question, the *Fennema* court was required to reconcile the competing concerns of (1) protecting insureds "against financially irresponsible motorists" by "assuring that, in the event of an accident with an underinsured motorist, an insured motorist will receive at least the sum certain in underinsurance coverage purchased for his or her benefit," and (2) protecting an insurer's subrogation interest and preventing collusion between an insured and a tortfeasor.   *Id.* at 494 (citation omitted).   The *Fennema* court resolved these competing concerns by holding "that for an insurer to justify foreclosing an insured's right to underinsured motorist benefits, the insurer must demonstrate it was substantially prejudiced by the insured's breach of the consent-to-settle provision," because this requirement "strikes a proper balance between protecting the insurer's subrogation interest and avoiding forfeiture of an insured's coverage when an insurer has not been injured."   *Id.* at 492, 494 (citation omitted).   The court reasoned that "it would be inconsistent with the purpose of the underinsured motorist statute to deny an insured indemnification when the insured's breach of a consent-to-settle provision has no real effect on the insurer's ability to recover from an insolvent tortfeasor through subrogation."   *Id.* at 494.

    The facts of *Fennema* are somewhat analogous to those here.   The insured in *Fennema*,

---

[2]   In a diversity jurisdiction case, a federal district court applies the law of the forum state "with the objective of obtaining the result that would be reached in state court."   *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007); *accord Mem. Hosp. v. Healthcare Realty Trust Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007).   "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state."   *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007).

who was injured in a motor vehicle accident with a negligent tortfeasor, settled with the tortfeasor for $25,000, which was the limit of the tortfeasor's insurance coverage, and the insured signed a full release of liability to the tortfeasor and her insurer.   *See id.* at 492.   The insured admitted that in so doing he breached the consent-to-settle provision in his State Farm policy because he did not obtain the written consent of State Farm to settle his claim against the tortfeasor.   *See id.* Although the *Fennema* court rejected State Farm's contention that the insured's breach of the consent-to-settle provision alone was sufficient to relieve State Farm of its obligation to pay, and held that State Farm was relieved of its duty to pay only upon a showing of substantial prejudice, the Supreme Court nonetheless affirmed the district court's grant of summary judgment in State Farm's favor because it held that the insured did not offer evidence sufficient to rebut the presumption of prejudice to State Farm.   *See id.* at 495-96.

The *Fennema* court summarized the evidentiary burdens of the parties regarding the question of prejudice to an insurer arising from an insured's breach of policy provisions.   The Supreme Court indicated, "[a]lthough the insurer shall have the ultimate burden of persuasion to demonstrate substantial prejudice, a presumption of substantial prejudice "arises upon proof of a breach of a policy provision."   *Id.* at 495 (citation omitted).   "That presumption permits the fact finder to infer that the insurer was in fact substantially prejudiced, although the presumption is rebuttable."   *Id.* at 495 (citing *Roberts Oil Co. v. Transamerica Ins. Co.*, 833 P.2d 222, 233 (10th Cir. 1992)).   "The presumption may be met or rebutted by the insured by presenting evidence that the insurer was not substantially prejudiced."   *Id.* (citing *Rafferty v. Progressive Am. Ins. Co.*, 558 So. 2d 432 (Fla. Dist. Ct. App. 1990); *Roberts Oil*, 833 P.2d at 234).   The insurer, however, maintains the ultimate burden of persuasion on the question of substantial prejudice.   *See id.*   The insurer "can attempt to meet its ultimate burden of persuasion by presenting evidence that the

tortfeasor did have resources with which to pay a tort judgment," or, stated differently, was "unlikely to be judgment-proof."   *Id.*

Cincinnati Insurance mischaracterizes Plaintiff's burden under these standards. Cincinnati Insurance argues that its ultimate burden of persuasion of establishing that Velarde and her father did have resources with which to pay a judgment "only arises once Plaintiff has *proven* they are judgment proof."   [Doc. 35 at 8 (emphasis added)].   *Fennema*, however, does not require Plaintiff to prove this ultimate fact but rather, on summary judgment, only to present evidence sufficient to raise a genuine dispute of material fact whether he has produced sufficient evidence to rebut the presumption of substantial prejudice.   *See Fennema*, 110 P.3d at 495 (citing *Rafferty*, 558 So. 2d 432).   Indeed, this is precisely what the court held in *Rafferty v. Progressive American Insurance Co.*, 558 So. 2d at 433, and *Roberts Oil v. Transamerica Insurance Co.*, 833 P.2d at 234, two cases cited by the Supreme Court in *Fennema* while discussing an insured's evidentiary burden to rebut the presumption of prejudice.   *See Fennema*, 110 P.3d at 495 (citations omitted).   In *Rafferty*, the court held that the insured's "facts about the [tortfeasors'] financial condition [were] sufficient to raise a factual issue as to whether the settlement prejudiced [the insurer]," and therefore held that the trial court erred in grating summary judgment in the insurer's favor.   558 So. 2d at 433.   Likewise, in *Roberts Oil*, the New Mexico Supreme Court reversed the trial court's grant of summary judgment in the insurer's favor, because the insured produced affidavits suggesting that the insured's breach of certain provisions in the policy did not prejudice the insurer, and the court explained that this evidence, "together with the evidentiary effect of the presumption, combined to create factual issues that could only be resolved by a trial." 833 P.2d at 234.

Contrary to Cincinnati Insurance's contention, Plaintiff was not required by New Mexico

law to prove that the tortfeasor Velarde was judgment proof.   The Supreme Court specifically has held that it is the insurer's ultimate burden of persuasion to establish that the "tortfeasor did have resources with which to pay a tort judgment," and was "unlikely to be judgment-proof." *Fennema*, 110 P.3d at 495.   If the Court were to require Plaintiff to "prove" Velarde is judgment proof, the Court would be shifting the ultimate burden of persuasion on the question of substantial prejudice to Plaintiff in contravention of New Mexico law.   Thus, to withstand Cincinnati Insurance's Motion for Summary Judgment, Plaintiff is required only to present evidence sufficient to raise a factual issue as to whether the settlement prejudiced Cincinnati Insurance.

II.    <u>Plaintiff has Satisfied His Burden of Raising a Material Dispute of Fact Precluding Summary Judgment on the Question of Whether Plaintiff's Settlement with Velarde or Failure to Notify Cincinnati Insurance of Suit Within the Three-Year Statute of Limitations for Claims Against Velarde Resulted in Substantial Prejudice.</u>

Cincinnati Insurance contends that Plaintiff breached two clauses of the insurance policy and that these breaches relieved it of its coverage obligations.   Cincinnati Insurance first contends that Plaintiff violated the consent-to-settle provision in the policy when he released Velarde from all liability in exchange for the tortfeasor's policy limit of $25,000 without first obtaining Cincinnati Insurance's consent.   Cincinnati Insurance also contends that Plaintiff breached the prejudice-to-subrogation-rights clause of the policy when Plaintiff failed to notify Cincinnati Insurance of the accident within the three-year statute of limitations on claims against Velarde and nonetheless filed suit.   The Court first determines whether Plaintiff's breach of the consent-to-settle clause, and next whether his breach of the prejudice-to-subrogation-rights clause, relieved Cincinnati Insurance of its coverage obligations under the policy.

      A.    <u>Plaintiff's Breach of the Consent-to-Settle Provision did not Substantially Prejudice Cincinnati Insurance and Therefore did not Relieve Cincinnati Insurance of Its Coverage Obligations.</u>

The Court holds that Plaintiff's evidence is sufficient to raise a genuine factual dispute precluding summary judgment on the question whether Plaintiff's settlement with Velarde substantially prejudiced Cincinnati Insurance and thereby relieved it of its coverage obligations. To rebut the presumption of substantial prejudice, Plaintiff points to the May 5, 2014, affidavit of Velarde, in which, almost four and one-half years after the accident, she attests that "she owns no real property or land," "[s]he owns no cars or other vehicles," and "[s]he has a high school diploma and no college degree."   Cincinnati Insurance contends that this evidence is not sufficient to rebut the presumption of substantial prejudice because "[t]here is a much more realistic possibility than not, that Rosalinda Velarde, as a then nineteen (19)-year-old, and now twenty-three (23)-year-old, was and is entirely capable of working and earning a wage," and that "[i]t is completely unfounded to state that just because someone, at the age o[f] either nineteen (19) or twenty-three (23), does not own property or have a college degree, she will not be prosperous in her life."   [Doc. 35 at 5].

In *Fennema*, the Supreme Court considered whether the insured's evidence that "the tortfeasor was a graduate assistant at the University of New Mexico Psychology Department" was sufficient to rebut a presumption of substantial prejudice to an insurer.   110 P.3d at 495.   The Supreme Court held that, "[w]ithout more, this evidence does not, as a matter of law, meet or rebut the presumption of substantial prejudice.   State Farm may have had a realistic possibility of recovering from the tortfeasor, who, as a graduate student in psychology, was likely to be gainfully employed in the near future."   *Id.*   The Supreme Court reasoned that "[j]udgments in New Mexico may be enforced in the state for fourteen years by, among other things, attaching real estate or garnishing wages," *id.* (citing N.M. Stat. Ann. §§ 39-4-1 to -3, 37-1-2), and concluded that the insured "failed to present any evidence to demonstrate that State Farm would be unlikely to collect from tortfeasor within this period as a matter of law," *id.*

11

The Court is not persuaded by Cincinnati Insurance's argument that *Fennema* dictates the result here.   *Fennema* is distinguishable because the plaintiff there only presented evidence that the tortfeasor was a graduate student in psychology.   *Fennema* held this evidence, "without more" could not as a matter of law rebut the presumption of substantial prejudice.   *Id.*   The *Fennema* court explained that "when there exists a realistic potential for the insurer to recover from the tortfeasor, courts must carefully preserve the right of subrogation and enforce consent-to-settle provisions."   *Id.*   The court quite reasonably concluded that it was "likely" a graduate student in psychology would be gainfully employed within the fourteen-year period during which State Farm could collect on a judgment.   *See id.*   Unlike the plaintiff in *Fennema,* Plaintiff here does not solely rely upon Velarde's status as a student to rebut the presumption of substantial prejudice. Rather, Plaintiff relies upon evidence that Velarde owns no real property or land, that she owns no cars or other vehicles, and that she does not have a college degree and only has a high school diploma.

While this evidence does not conclusively establish that Velarde has insufficient resources from which she could pay a tort judgment, it is not Plaintiff's burden to establish this ultimate fact. Plaintiff must only rebut the presumption of substantial prejudice that arose upon his breach of the consent-to-settle provision in the policy.   The evidence Plaintiff produces is sufficient to rebut this presumption and to shift the burden back to Cincinnati Insurance to establish that Velarde is unlikely judgment proof.   For the foregoing reasons, the Court holds that Plaintiff's evidence creates a factual issue on the question whether Velarde is judgment proof sufficient to preclude summary judgment.

       B.    <u>Whether Plaintiff's Breach of the Prejudice-to-Subrogation-Rights Clause Substantially Prejudiced Cincinnati Insurance Such That the Company was Relieved of Its Coverage Obligations.</u>

Cincinnati Insurance also contends that Plaintiff's act of filing suit breached the provision of its insurance policy which provides that an insured's claim for uninsured motorist coverage must not prejudice the insurer's subrogation rights.   [Doc. 31-3 at 4].   That provision provides in relevant part that an insured shall not bring a lawsuit against the insurer "unless the 'insured' has satisfied all of the things that 'insured' is required to do under the terms . . . of the [policy]" and provides in the same paragraph that the insurer's "subrogation rights also must not be prejudiced." Cincinnati Insurance contends that, because it did not have notice of the accident until over three years after the accident occurred, it was not able to protect its subrogation rights against Velarde or her father within the three-year statute of limitations barring claims against them.   [Doc. 31 at 9, 11].

The Court is not persuaded.   Even assuming that Plaintiff breached the clause when he filed suit against Cincinnati Insurance, the Court holds that this clause, like the consent-to-settle clause, is subject to New Mexico's substantial prejudice rule.   In *Foundation Reserve Insurance Co. v. Esquibel*, the New Mexico Supreme Court explained that the "weight of authority and the trend nationally is to adopt the standard of substantial prejudice to the insurer" and held that "this standard [is] applicable in New Mexico as well."   607 P.2d 1150, 1152 (N.M. 1980).   The particular provisions in the policy at issue in *Esquibel* were clauses providing that the policy would be voided if the insured failed to notify the insurer of an accident, failed to cooperate in defending or settling a claim, or willfully concealed material facts concerning a claim.   *See id.* at 1151.   Although the *Esquibel* court found that the insured's breach was material, the court held that the insurer had not been substantially prejudiced and the insurer therefore was liable to defend and indemnify the insured under the policy.   *See id.* at 1152.

13

In *Roberts Oil Co. v. Transamerica Ins. Co.*, 833 P.2d 222 (1992), the insurer attempted to distinguish *Esquibel* on the ground that the court, in reaching its holding, stated that "'[t]he risk-spreading theory of liability should operate to afford to affected members of the public—frequently innocent third persons—the maximum protection possible consonant with fairness to the insurer.'" *Id.* at 228 (quoting *Esquibel*, 607 P.2d at 1152). The trial court in *Roberts Oil* likewise "seized on this same language," and, in granting summary judgment to the insurer, held that "the 'prejudice' rule would not be extended to the present dispute because no 'innocent third party' is injured." *Id.* On appeal, the *Roberts Oil* court rejected the argument that *Esquibel* could be limited so narrowly, pointing out that at the beginning of the *Esquibel* opinion the court defined the question before it broadly as whether a material breach of an insurance contract is sufficient to void the policy or whether the insurer must also demonstrate actual prejudice resulting from the breach. *See id.* The *Roberts Oil* court concluded that "[t]here is no indication in the [*Esquibel*] opinion, nor any in the many other cases requiring a showing of actual prejudice, that the rule operates only when an innocent third party is or has been injured." *Id.* Rather, *Roberts Oil* explained that, in determining whether the substantial prejudice rule applies to an insured's breach of a policy provision, a court should "focus[] on the purpose of the particular clause in question and inquir[e] whether that purpose will be advanced by applying [the substantial prejudice rule] to the dispute in a given case." *Id.* at 229. The Court concluded that where the "'reason for such a clause is fear of prejudice to the insurer, it is reasonable to require a showing of prejudice.'" *Id.* (quoting *Sanchez v. Kemper Insurance Cos.*, 632 P.2d 343, 345 (N.M. 1981)).

The Court predicts that the New Mexico Supreme Court would conclude that the reason for the prejudice-to-subrogation-rights clause is fear of prejudice to the insurer and, therefore, under *Roberts Oil*, it is reasonable to require a showing of substantial prejudice prior to relieving

Cincinnati Insurance of its coverage obligations for breach of this clause.  As previously discussed, the Supreme Court in *Fennema* held that a consent-to-settle clause is concerned with protecting an insurer's subrogation rights and avoiding prejudice to an insurer, and that the substantial prejudice rule applies to this type of clause.  *See* 110 P.3d at 494.  The Court predicts that the Supreme Court of New Mexico similarly would hold that the substantial prejudice rule applies to the prejudice-to-subrogation-rights clause because the facially-apparent concern addressed by that clause is the protection of the insurer's subrogation rights.

Plaintiff has presented evidence that raises a question of fact whether Velarde is judgment proof.  This evidence is sufficient to rebut the presumption of substantial prejudice that arose upon Plaintiff's breach of the clause "[o]ur subrogation rights also must not be prejudiced." [Doc. 31-3 at 4] The Court therefore denies Cincinnati Insurance's Motion for Summary Judgment to the extent it seeks judgment in its favor on the question whether Plaintiff's breach of prejudice-to-subrogation-rights clause relieved Cincinnati Insurance of its coverage obligations.

III.    Motion for Summary Judgment Pursuant to Rule 56(d) to the Extent the Motion Seeks a Judgment in Cincinnati Insurance's Favor on the Question Whether Plaintiff's Settlement with Velarde's Father Resulted in Substantial Prejudice.

Cincinnati Insurance argues that it nonetheless is entitled to summary judgment in its favor because, even if the Court were to conclude that Plaintiff's evidence was sufficient to raise a factual dispute whether Velarde—the primary tortfeasor—is judgment proof, Plaintiff has failed to identify any evidence suggesting that Velarde's father—a secondary tortfeasor—is judgment proof.[3]  Plaintiff does not present an affidavit from Velarde's father and does not proffer any other

---

[3]   Cincinnati Insurance contends that it can pursue a negligent entrustment claim or a claim under the family purpose doctrine against Velarde's father.   New Mexico courts have defined the tort of negligent entrustment as "'permit[ting] a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends

evidence regarding the ability of Velarde's father to pay a tort judgment. Thus, according to Cincinnati Insurance, Plaintiff has failed to rebut the presumption of substantial prejudice that arose automatically when Plaintiff breached the consent-to-settle provision in the policy by releasing Velarde's father from liability without first obtaining Cincinnati Insurance's consent.

In response, Plaintiff argues that Cincinnati Insurance has not established that Velarde's father has resources to pay a tort judgment. He further argues that, pursuant to Federal Rule of Civil Procedure 56(d), Plaintiff requires additional discovery on the question of substantial prejudice. He asks that the Court deny the Motion for Summary Judgment to allow him a fair opportunity to complete the discovery that is outlined in his counsel's Rule 56(d) affidavit. [Doc. 34 at 9]. Neither the Supreme Court of New Mexico nor the New Mexico Court of Appeals has answered the question whether an insured, to rebut the presumption of substantial prejudice to an insurer that arises upon breach of clause in an insurance policy, must present evidence suggesting not only that the primary tortfeasor is judgment proof, but that every other tortfeasor against whom the insurer has any potential claim, no matter how likely that claim is to succeed, is judgment proof. Nor have the New Mexico courts addressed whether an insured must present this evidence for every potential tortfeasor under every possible claim when the insurer has failed to place its

---

or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.'" *McCarson v. Foreman*, 692 P.2d 537, 542 (N.M. Ct. App. 1984) (quoting Restatement (Second) of Torts § 308, at 100 (1965)). To establish a claim for injuries caused by the negligent entrustment of an automobile, the plaintiff must show that the defendant entrusted his automobile to another who the defendant knew or should have known was an incompetent driver, and whose incompetence caused the plaintiff's injuries. *See Hermosillo v. Leadingham*, 13 P.3d 79, 84 (N.M. Ct. App. 2000). Under the family purpose doctrine, if a finder of fact concludes that an owner of a motor vehicle furnished it "'for general family use and convenience, then the owner is liable for the negligent operation of the vehicle by a member of the family.'" *Madrid. v. Shryock*, 745 P.2d 375, 376 (N.M. 1987) (quoting N.M. Rules Ann. UJI 13-1210). To hold the defendant liable, the fact finder must conclude that the driver had authority to drive the motor vehicle and was using the motor vehicle for the pleasure or convenience of the family or one of its members. *See id.* (citing N.M. Rules Ann. UJI 13-1210).

insured on notice that it intends to argue that it suffered prejudice as a result of the insured settling his claims against a secondary tortfeasor.

The Court need not decide these questions, however, because it denies the Motion for Summary Judgment on the second ground advanced by Plaintiff—namely, that Plaintiff requires additional time to conduct the discovery set forth in his counsel's Rule 56(d) affidavit.   *Cf.* Fed. R. Civ. P. 56(d) (providing that a court can deny a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition).   A Rule 56(d) affidavit "must explain why facts precluding summary judgment cannot be presented.   This includes identifying the probable facts not available and what steps have been taken to obtain these facts.   In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quoting *Comm. for 1st Amend. v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)); *see Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993).

Plaintiff's Rule 56(d) affidavit satisfies these requirements.   To meet Plaintiff's burden of explaining why he cannot present facts precluding summary judgment, Plaintiff's counsel "certif[ies] that because discovery in this case is in its initial stages, Plaintiff has not had a sufficient opportunity to . . . obtain the full extent of discovery to which he is entitled to support his claim that Cincinnati Insurance['s] denial of underinsured motorist coverage . . . was inappropriate," and that "[n]o depositions have been taken thus far in this case."   [Doc. 34-4 at 1, ¶¶ 1, 2].   To satisfy Plaintiff's burden of identifying probable facts not available and demonstrating how additional time will enable him to rebut Cincinnati Insurance's allegations of no genuine issue of fact, Plaintiff's counsel attests that "[i]n order to establish the essential facts

relevant to proving that Cincinnati Insurance . . . was not 'substantially prejudiced' by Plaintiff's acceptance of a policy limits offer of settlement from the liability carrier of the tortfeasor driver who injured him, Plaintiff must be permitted to obtain the sworn testimony by deposition of" Velarde and her father.   [*Id.* at 1, ¶ 2.a, b].   Counsel also explains that "Velarde and [her father] will testify about their lack of assets to further establish that they are both judgment proof and that Plaintiff's policy limits settlement with their liability carrier was reasonable and did not result in 'substantial prejudice' to Cincinnati Insurance" and that Plaintiff's written discovery requests to Cincinnati Insurance will demonstrate that "Plaintiff anticipates will further demonstrate that Ms. Velarde and Mr. Velarde are judgment proof and that Defendant Cincinnati Insurance Company did not experience 'substantial prejudice' as a result of Plaintiff's policy limits settlement."   [*Id.* at 2, ¶¶ 3, 4].   To satisfy Plaintiff's burden of identifying the steps he has taken to obtain the facts required, Plaintiff's counsel attests that "Plaintiff has served written discovery requests on [Cincinnati Insurance]."   [*Id.* at 2, ¶ 4].   These showings are sufficient to satisfy the Tenth Circuit's prerequisites to Rule 56(d) relief.

The Court also holds that Plaintiff has established that he has not been dilatory in attempting to obtain the necessary discovery and that his Rule 56(d) request has merit.   The Tenth Circuit has held that, "'[u]nless dilatory or lacking in merit,'" a party's 56(d) application "'should be liberally treated.'"   *Jensen*, 998 F.2d at 1554 (quoting *Comm. for 1st Amend.*, 962 F.2d at 1522); *id.* (explaining that if the party filing a Rule 56(d) affidavit has been dilatory, a Rule 56(d) request for extension should not be granted and denying relief because "the record reflect[ed] that plaintiffs were dilatory in pursuing discovery prior to the filing of their 56[(d)] affidavit").   Factors relevant to whether a party has been dilatory in pursuing discovery include "the length of the pendency of the case prior to the Rule 56[(d)] request" and "whether and when plaintiff could

18

have anticipated its need for the requested discovery." *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1031 (5th Cir. 1983); *see Jensen*, 998 F.2d at 1555 n.7 (noting that the Fifth Circuit enumerates "factors to be considered in determining whether a party has been dilatory in seeking discovery") (citing *Paul Kadair*, 694 F.2d at 1031).

Regarding the first factor, the Court notes that this case was removed on November 18, 2013, [Doc. 1], and that Plaintiff filed his response to the Motion for Summary Judgment and his Rule 56(d) affidavit explaining the basis of his request for relief on June 12, 2014, [Doc. 34-4]. During this seven month period, the parties engaged only in the preliminary stages of discovery and litigation.   The parties filed their joint status report on January 7, 2014, [Doc. 10]; Cincinnati Insurance filed its initial disclosures on January 14, 2014, [Doc. 15], and Plaintiff filed his initial disclosures on January 15, 2014, [Doc 16]; Cincinnati Insurance served its first set of interrogatories and requests for production on March 4, 2014 [Doc. 19]; Cincinnati Insurance noticed the deposition of Plaintiff on April 7, 2014 [Doc. 23]; and, Plaintiff served its answers and supplemental answers to Cincinnati Insurance's interrogatories and requests for production on April 14, 2014, and May 2, 2014, respectively [Docs. 24, 25].   Moreover, at the time Plaintiff filed his counsel's Rule 56(d) affidavit, the discovery deadline was not set to expire until October 3, 2014.   [Doc. 30].   This timeline establishes that discovery was in its early stages and that, when Cincinnati Insurance filed its Motion for Summary Judgment on May 29, 2014, Plaintiff still had four months remaining during the discovery period to obtain the facts he required to respond to Cincinnati Insurance's motion.   Thus, the Court holds that the factor of the length of the pendency of the case prior to Plaintiff's request for relief under Rule 56(d) weighs in favor of granting Plaintiff relief.

The second factor—namely, whether and when plaintiff could have anticipated his need

19

for the requested discovery—also weighs in favor of granting the relief Plaintiff requests. *Cf.*
*Paul Kadair*, 694 F.2d at 1031, *cited in Jensen*, 998 F.2d at 1555 n.7.   On the question whether
Velarde's father is judgment proof, the Court holds that, on the facts before the Court, Plaintiff
could not have anticipated a need to rebut a presumption that Cincinnati Insurance was
substantially prejudiced by Plaintiff's settlement with Velarde's father until Cincinnati Insurance
filed its Motion for Summary Judgment.

Cincinnati's letters use the word "tortfeasor" or responsible "party," and this use of the
singular implies that Cincinnati Insurance's argument of prejudice was limited to the settlement
with Velarde herself.   For example, in the reservation of rights letter, Cincinnati Insurance
explains that the reason for its reservation of rights is that, among other things, the "first notice of
the claim exceeds the 3 year statute of limitations which may have prejudiced our right to recovery
from the responsible *party* and because Mr. Norero settled his claim against the responsible *party*,
February 2012, . . . releasing the *tortfeasor* from liability without our expressed or impl[ied]
consent."   [Doc. 31-7 at 3 (emphasis added)].   This is just one example of several in the
reservation of rights letter in which Cincinnati Insurance refers only to a single "tortfeasor" or
responsible "party."   [*Id.*].   Moreover, in its letter denying coverage to Plaintiff, Cincinnati
Insurance similarly refers only to substantial prejudice resulting from Plaintiff's settlement of one
"tortfeasor."   [Doc. 34-2].   For example, in explaining its decision to deny coverage, Cincinnati
Insurance states, "Mr. Norero, while under guidance of counsel, violated numerous policy
conditions that greatly prejudiced our right and ability to investigate[], settle[] and seek recovery
from the responsible *tortfeasor*."   [*Id.* at 2 (emphasis added)].   The Court concludes that these
letters did not give Plaintiff cause to anticipate that Cincinnati Insurance intended to argue that it
was substantially prejudiced by Plaintiff's settlement with Velarde's father.

Likewise, the Court concludes that neither Cincinnati Insurance's initial pleadings nor its contentions set forth in the joint status report were sufficient to place Plaintiff on notice that Cincinnati Insurance intended to argue that it suffered substantial prejudice as a result of Plaintiff's settlement with Velarde's father. Cincinnati Insurance's answer and amended answer do not mention Velarde's father and, while in the joint status report Cincinnati Insurance asserts that it was prejudiced by Plaintiff's settlement with Velarde herself, Cincinnati Insurance makes no reference to Velarde's father. [Doc. 10 at 3-4]. In the joint status report, Cincinnati Insurance "contends that Plaintiff was under advice of prior counsel when he settled his claim with *Ms. Velarde* regarding the December 10, 2009, accident," that "Plaintiff's notice [of the accident], through the law firm of Plaintiff's current counsel, came substantially beyond the applicable statute of limitations for any claims against *Ms. Velarde*," that "the settlement by Plaintiff and his prior counsel with *Ms. Velarde* was done so without the consent of [Cincinnati Insurance]," and that "[Cincinnati Insurance] is substantially prejudiced by the failures of Plaintiff and his attorneys to comply with the provisions of the insurance policy" because "Plaintiff has not provided substantive evidence that *Ms. Velarde* is judgment proof." [*Id.* (emphasis added)]. In addition, Cincinnati Insurance neither identifies Velarde's father as a potential witness nor identifies any other witness or expert witness whose testimony is relevant to Cincinnati Insurance's potential subrogation claims against Velarde's father or to Velarde's father's financial condition. [*Id.* at 6-9, 10]. Likewise, Cincinnati Insurance identifies no exhibit related to Velarde's father or Cincinnati Insurance's potential claims against him. [*Id.* at 9-10]. On these facts, the Court concludes that the factor of whether and when a Rule 56(d) applicant could have anticipated its need for requested discovery weighs in favor of granting Plaintiff relief.

The discovery Plaintiff seeks in his counsel's Rule 56(d) affidavit is, for these reasons,

essential to opposing the Motion for Summary Judgment.  Because Plaintiff's Rule 56(d) affidavit satisfies the Tenth Circuit's prerequisites for relief, discovery in this suit was in its preliminary stages at the time of Plaintiff's Rule 56(d) request, and Plaintiff could not have anticipated the need to rebut a presumption of substantial prejudice arising from Plaintiff's settlement with Velarde's father until after he was served with the Motion for Summary Judgment, the Court is persuaded that Plaintiff is entitled to relief under Rule 56(d).  The Court denies the Motion for Summary Judgment pursuant to Rule 56(d) to the extent the motion seeks judgment in Cincinnati Insurance's favor on the question whether Plaintiff's settlement with Velarde's father substantially prejudiced Cincinnati Insurance and relieved of its coverage obligations.

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant The Cincinnati Insurance Company's Motion for Summary Judgment on Plaintiff's Claim for Declaratory Judgment and Bad Faith [Doc. 31] is hereby **DENIED**.

**SO ORDERED** this 31st day of March, 2015.

_____
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE